**SMITH & BRINK, P.C.**
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
ONE STATE STREET
SUITE 400
PROVIDENCE, RI 02908
TELEPHONE: (401) 351-9970
FAX: (401) 274-6218
www.SmithBrink.com

**Ronald Langlois*♦**
*rlanglois@smithbrink.com*

* *Admitted in Rhode Island*
♦ *Admitted in Massachusetts*

QUINCY OFFICE
122 QUINCY SHORE DRIVE
SECOND FLOOR
QUINCY, MA 02171
TELEPHONE: (617) 770-2214
FAX: (617) 774-1714

DANVERS OFFICE
99 ROSEWOOD DRIVE
UNIT 240
DANVERS, MA 01923
TELEPHONE: (978) 646-9114
FAX: (978) 646-9264

SPRINGFIELD OFFICE
191 CHESTNUT STREET
SUITE 3D
SPRINGFIELD, MA 01103
TELEPHONE: (413) 746-8122
FAX: (413) 781-6290

August 12, 2004

Richard F. Aube
P.O. Box 1273
West Warwick, Rhode Island 02893

RE: Insured: Eagle's Nest Condominium
Date of Loss: 7/02
Type of Loss: Physical Damage to Property – Truss Damage

Dear Mr. Aube:

Please be advised that I have been retained to provide legal advice and counsel to NLC with respect to the above matter. This letter is intended to respond to your correspondence of July 21, 2004. As you report, "The Eagle's Nest Condominium Complex discovered damage to floor trusses in July, 2002". It appears from the review of the correspondence that the Eagle's Nest Condominium Association retained Geisser Engineering of Riverside, Rhode Island to assess the problem. Geisser appears to have inspected the property as early as October 25, 2002. They commenced with certain repairs on the property beginning as early as December, 2002. In your correspondence of June 3, 2004, you submit full payment entitled "Eagle's Nest Unit Structural Repair Expense for 2002 and 2003". Eagle's Nest's broker was not advised of this loss until March 15, 2004. Eagle's Nest's policy provides in pertinent part:

**DUTIES IN THE EVENT OF LOSS OR DAMAGE**

**a.** You must see that the following are done in the event of loss or damage to covered property:

(2) Give us prompt notice of the loss or damage, include a description of the property involved.

(3) As soon as possible, give us a description of how and where the loss or damage occurred.

The evidence demonstrates that Eagle's Nest Condominium Association did not comply with this requirement. NLC never had an opportunity to inspect the units where the losses purportedly occurred. They never had an opportunity to evaluate the repairs performed. Finally, at the present time NLC has insufficient information to either confirm or deny your request for payments. As part of its investigation, NLC is requesting that you provide us with the following information:

EXHIBIT
tabbies
K

1. Minutes of all Condominium Association meetings from January 1, 1998 to the present.
2. A list identifying the owners of the unit for which you are seeking payment.
3. A list of all units sold at the Eagle's Nest Condominiums between January 1, 1998 and the present.
4. Any and all reports prepared by Geisser Engineering Corporation.
5. Any and all reports prepared by Hardpine, Inc.
6. Any and all documents, notes, or memoranda referring to any repairs or maintenance performed on the condominium units from date of their construction to the present.
7. Any and all documents evidencing any of the entities who constructed the condominium units.
8. Any and all documents evidencing the name of the truss manufacturer or entity who constructed the trusses at the condominium units.
9. Any documents, correspondence, memorandums and notes submitted by any unit owner to any board member of the Condominium Association, any other governing board of the Condominium Association relating to any cracks or damage to their units.
10. Any and all documents evidencing when the Eagle's Nest Condominiums were constructed.
11. Any and all documents from any governmental agency relating to the inspection of the condominium units from date of their construction to the present.
12. Any and all documents evidencing any assessment on a unit owner's for the cost of any repairs to the trusses at any point in time.

Given the late notice in which NLC was presented with this claim to insufficient information which has been provided, NLC is not in a position to indicate when payments, if any, will be made.

Please be advised that the New London County Mutual Insurance Company will not waive any terms or conditions of the subject policy or their rights or defenses thereunder or at law as it continues in its investigation and adjustment of the subject loss. The New London County Mutual Insurance Company will continue its investigation into this matter and into claims asserted. However, this investigation into the cause and origin of this report of loss and review of coverage remains ongoing and incomplete. The New London County Mutual Insurance Company will conduct its investigation pursuant to a full and complete reservation of rights, and New London County Mutual Insurance Company reserves its right to disclaim any and all liability under the above referenced policy of insurance should this investigation demonstrate that the coverage afforded by the policy is inapplicable for this matter. Nothing contained herein, nor any continued investigation by the insurer or its representatives or compliance by insured with any of the policy terms and conditions is intended be, nor shall it be construed as, a waiver by the insurer of any of the terms and/or conditions of the policy of insurance, nor of any rights or defense as the insurers has or may have, whether based upon

facts known or become known in the future, whether legal or equitable in nature nor as admission of liability by the insurer with any person, or entity whatsoever.

If you have any questions in this matter, please do not hesitate to contact me.

Very truly yours,

Ronald Langlois, Esq.

RL/sal

***Sent via Fax & Regular Mail***