UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EAGLE'S NEST CONDOMINIUM ASSOCIATION, INC., ALSO KNOWN AS EAGLE NEST CONDOMINIUM ASSOC.

Plaintiff,

VS. Civil Action, File No. 04-436ML

NEW LONDON COUNTY MUTUAL INSURANCE COMPANY, NLC INSURANCE COMPANIES, INC., DOES I THROUGH V, AND NLC INSURANCE COMPANIES, ALIAS JOHN DOE COMPANY, et al.

Defendants.

DEPOSITION OF DIANE LANDOCK, a witness in the above-entitled cause, taken on behalf of the Plaintiff, before Ronald M. Ronzio, a Notary Public in and for the State of Rhode Island, at the Office of Allied Court Reporters, Inc., 115 Phenix Avenue, Cranston, Rhode Island on January 5, 2006 at 9:00 A.M.

PRESENT:

FOR THE PLAINTIFF . . ORABONE & GREENE
BY: STEVEN H. ORABONE, ESQUIRE

FOR THE DEFENDANT . . SMITH & BRINK, P.C.
BY: RONALD LANGLOIS, ESQUIRE

ALLIED COURT REPORTERS, INC.
115 PHENIX AVENUF
CRANSTON, RI 0292(
(401) 946-5500
www.alliedcourtreporte:

Plaintiff's Exhibit 11

grabbed Exhibit 1, right?
A. Yes.
Q. Why don't we put a sticker there.
A. Um-hum.
THE WITNESS: Identify where it is in the policy?
MR. ORABONE: Yes, but don't mark the policy because this is the only clean copy I have right now, please. You can make a mark on the purple sticker if you want. We can always take that off.
A. The name of the form is condominium association coverage form. The form number is CP0017, and the edition date is 06/95. And under the conditions portions on Page 6, Number 3 says duties in the event of loss or damage. Want me to read it?
Q. Just -- is it those four paragraphs, those four numbered paragraphs?
A. It's eight.
Q. Eight numbered paragraphs, okay. And let me just take that for a second.
A. Sure.
Q. Number 4, take all reasonable steps to protect the covered property from further damage. Isn't that

what you basically refer to as mitigation of damages?

A. Yes.

Q. That's something the insurance company benefits from, correct?

A. As does the insured.

Q. Everybody benefits because it reduces the loss?

A. Correct.

Q. So certainly that's something that NLC wants its insureds to do with any loss?

A. Correct.

Q. Do whatever reasonable thing is within their control to keep the loss from getting worse?

A. Yes.

Q. And do you have any knowledge in this case as to whether Eagle's Nest did that?

MR. LANGLOIS: Objection.

A. I'm not sure because we got notified of the loss so far after, I'm not sure what they did, whether they mitigated the loss or not because a whole bunch of repairs were done, parts were not saved.

Q. What parts were not saved?

A. They're alleging that there were damaged trusses and things like that, and we haven't been