UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EAGLE'S NEST CONDOMINIUM
ASSOCIATION, INC., A/K/A
EAGLE NEST CONDOMINIUM ASSOC.

VS. C.A. NO.: 04-436ML

NEW LONDON COUNTY MUTUAL
INSURANCE COMPANY, NLC
INSURANCE COMPANIES, INC.,
DOES I THROUGH V AND
NLC INSURANCE COMPANIES,
ALIAS JOHN DOE COMPANY

COPY

DEPOSITION OF **BARBARA PERRINO**,

taken on behalf of the Defendants, Friday, January 6, 2006 at 10:00 a.m. pursuant to the Rhode Island Rules of Civil Procedure at the offices of Smith & Brink, P.C., One State Street, Suite 400, Providence, Rhode Island before Linda F. Oakley, RPR, Inc., Notary Public.

APPEARANCES:

STEVEN ORABONE, ESQ.
Counsel for the Plaintiff

FRANK LOMBARDI, ESQ.
Counsel for the Deponent

SMITH & BRINK, P.C.
BY: RONALD LANGLOIS, ESQ.
Counsel for the Defendants

Plaintiff's Exhibit 12

REPORTING ASSOCIATES
10 Dorrance Street, Suite 617
Providence, RI 02903

Phoenix Property Management through the first bid process on insurance that I had done for them. And he continued from that point forward.

Q So for, you told me, but I forget the exact time. In 1994 or so?

A Yes. '94, '95.

Q So to the best of your recollection, Mr. Smith had been the insurance agent for Eagle's Nest that whole nine-, ten-year period?

A Yes.

Q And he was responsible for placing their policies?

A Yes.

Q And that continued during the five years that your organization managed the Eagle's Nest property?

A Yes.

Q Did he have a connection at Eagle's Nest with friends or businesses?

A No.

Q Now, looking at the --

(Document handed to the reporter)

(PHOTOSTATIC COPY OF THREE-PAGE DOCUMENT TITLED EAGLE'S NEST CONDOMINIUM ASSOCIATION EXECUTIVE BOARD MEETING, 10 FEBRUARY 2003 WAS MARKED DEFENDANTS' EXHIBIT D, IDENTIFICATION)

MR. ORABONE: Could we just hold on for a

Mr. Smith?
A No.
Q Did he ever put anything in writing?
A No.
Q Okay. Do you know whether or not anyone spoke to Mr. Smith regarding this issue, other than yourself?
A The current Board of Directors.
Q When you say the current, as of 2002, 2003, or presently?
A The present.
Q The 2005 Board?
A Yes.
Q What do you recall about your discussions with Mr. Smith regarding whether this loss was covered?
A He advised that because it was a structural issue, it would not be a covered loss.
Q And he was the Association's agent, correct?
MR. ORABONE: Objection.
A Yes.
MR. ORABONE: Just for the record.
Q And when did Mr. Smith tell you, as the Association's agent, --
MR. ORABONE: Objection.
Q -- that the loss was not covered? You can answer it.
A When did he tell me?

Q Yes.

MR. ORABONE: Just for a second, just so this doesn't get annoying. Off the record.

(Discussion off the record)

Q Do you remember the question?

A No.

(Question and Answer on Lines 13 through 16 of page 35 read)

Q Do you recall when you had those conversations with Mr. Smith?

A I don't recall exactly when, no.

Q Was it more than once?

A Yes.

Q Why was it more than once?

A Because the expenses continued to increase. And I really wanted to make sure that I understood what the position was regarding coverage.

Q Now, Mr. Smith had been the agent for the Eagle's Nest Condominium Association --

MR. ORABONE: Objection.

Q -- for at least ten years, as far as you knew, correct?

A Yes.

Q It could have been longer?

A No, it was not longer.

Q You believe it originated when you were at Phoenix Management?
A I know it originated because I brought him in through bid process.
Q And he also wrote the D and O policy --
A Yes.
Q -- for the Association, correct?
A Yes.
Q Other than the D and O and the property and liability coverage, did they have any other policies?
A Well, they had umbrella coverage.
Q And that was written through Mr. Smith's agency?
A Yes. All insurance policies were written through his agency.
Q And when you were acting on behalf of the Association, you relied upon what Mr. Smith was telling you as the Association's insurance agent?
MR. ORABONE: Objection.
A Yes.
Q You were relying upon his advice and understanding of insurance policies?
A Yes.
Q When Mr. Smith was advising you that this loss was not covered, was he referring to specific policy language?

MR. LANGLOIS: Objection.
Q Sid Smith, when you contacted him, notified him of this problem, did he ever make any mention, did he ever state anything to the effect that he was the wrong person to contact?
A I don't remember that he would say one way or the other.
Q All right. Then how did you know to contact Sid Smith? How did you make that decision?
A 'Cause he's the insurance agent.
Q Had you had other occasions in the past to contact Sid Smith on claims?
A Yes.
Q Was that your normal procedure?
A Yes.
Q And based on your experience in the property management field since approximately 1978, --
A Yes.
Q -- is that what is ordinarily done when you have a claim?
A Yes.
Q You mentioned earlier, a discussion came up, a question about cabinets falling off of the wall. Do you recall when that discussion, you first heard something that talked about cabinets falling off the