**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**EAGLE'S NEST CONDOMINIUM ASSOCIATION, INC., A/K/A EAGLE NEST CONDOMINIUM ASSOC.**

**V.** **C.A.NO: 04-436ML**

**NEW LONDON COUNTY MUTUAL INSURANCE COMPANY, NLC INSURANCE COMPANIES, INC., DOES I THROUGH V AND NLC INSURANCE COMPANIES, ALIAS JOHN DOE COMPANY**

**DEFENDANT'S MOTION TO STRIKE THE AFFIDAVIT OF PLAINTIFF'S EXPERT, STEVEN BOGLE**

Now comes the Defendant, New London County Mutual Insurance Company (hereinafter "NLC)" and respectfully requests that this Court grant its Motion to Strike the Affidavit of Plaintiff's Expert, Steven Bogle. As grounds, the Defendant states that the Plaintiff failed to provide the Defendant with any expert reports and/or curriculum vitae in compliance with the Federal Rules of Civil Procedure. Furthermore, the opinions referenced in Mr. Bogle' Affidavit are not referenced in the plaintiff's answers to interrogatories, or Mr. Bogle' deposition testimony.

As further grounds, the Defendant further relies on its Memorandum attached hereto.

Defendant, NLC
By its attorneys,

Ronald Langlois, Esq. #2891
Smith & Brink, P.C.
One State Street, Suite 400
Providence, RI 02908
Tel: (401) 351-9970

## CERTIFICATION

I hereby certify that I mailed a true copy of the within to **Steven Orabone,** Esquire, 20 Ridgevale Court, Cranston, RI 02921 on the 13 day of March, 2006.

Dana Palangio

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**EAGLE'S NEST CONDOMINIUM ASSOCIATION, INC., A/K/A EAGLE NEST CONDOMINIUM ASSOC.**

**V.** **C.A.NO: 04-436ML**

**NEW LONDON COUNTY MUTUAL INSURANCE COMPANY, NLC INSURANCE COMPANIES, INC., DOES I THROUGH V AND NLC INSURANCE COMPANIES, ALIAS JOHN DOE COMPANY**

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE THE AFFIDAVIT OF PLAINTIFF'S EXPERT, STEVE BOGLE**

I. Background

On January 31, 2006, the Defendant, New London County Mutual Insurance Company (hereinafter "NLC), filed a Motion for Summary Judgment. On February 28, 2006, defense counsel received Plaintiff's opposition memoranda along with Affidavits purportedly from "experts".

Federal Rule of Civil Procedure 26(a)(2) states in pertinent part:

**Disclosure of Expert Testimony.**

> (B) [d]isclosure shall, with respect to a witness...specially employed to provide expert testimony...be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions;...the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.
> (C) These disclosures shall be made at the times and in the sequence directed by the court.

This Court's initial scheduling memorandum states that, "Plaintiff shall make its expert witness disclosures as required by F.R.Civ.P.26(a)(2) by January 14, 2005."

Although the pretrial order has been extended to grant additional time, the plaintiff has never complied with the requirements for expert witness disclosure.

The plaintiff is in violation of the Court's order and the Federal Rules of Civil Procedure by not providing the defendant with any expert reports or curriculum vitae for Steve Bogle, the plaintiff's proposed expert witness.

On or about January 14, 2005, the defendant served Interrogatories upon the plaintiff. On or about July 30, 2005, approximately six months later, the plaintiff served its Answers to Interrogatories upon defense counsel.

*Interrogatory Number 4*
*For each such person whom you or your attorneys anticipate calling to testify as an expert at the time of trial, state his/her full name, residential address, business address, occupation and field of expertise, the substance of the facts and opinions upon which he/she is expected to testify; and a summary of the grounds for each such opinion.*

*Answer 4: Plaintiff anticipates calling to testify as an expert at the time of trial Steven A. Bogle, P.E.; residential address: 47 Mohill Avenue, Swansea, MA 02777; business address: 227 Wampanoag Trail, Riverside, RI 02915; occupation: Professional Engineer (Senior Project engineer for Geisser Engineering); Field of Expertise: Residential and light commercial structural engineering.*
*Initially, Robert(Brett) Hiltz reported his measurements of Unit 15's ceiling deflection to Mr. Bogle. Mr. Bogle, therefore, started with a visual inspection of unit 15. In addition, at that time, Mr. Bogle measured one of Unit 15's trusses and visually inspected part of another truss at Unit 15. At that point, Mr. Bogle did not find any breaks in the trusses. Based on these facts and grounds, Mr. Bogle formed a preliminary opinion that the Unit 15 trusses were not properly designed to support the superimposed live and dead load for the distance they spanned and he formed a preliminary opinion that Unit 15's trusses should be reinforced with plywood on each side of the trusses to increase the amount of load the trusses could carry.*
*After Unit 15's repairs were begun, Mr. Bogle was called back in, and further inspected unit 15's trusses. In this inspection, Mr. Bogle, observed breaks on 2 of the trusses' bottom chords and based upon these facts and grounds (in combination with the facts and grounds forming the basis of his earlier opinion) he formed the opinion that Unit 15 had severe structural failure, and that other, four-plex style units in the condominium complex should be inspected. Also based on these facts and grounds, Mr. Bogle recommended that steel plates be used on each side of the broken trusses at the break. In later repaired units, the steel recommendation was replaced with a recommendation of added layers of plywood on future broken truss repairs.*
*With Brett, Mr. Bogle thereafter measured the ceiling deflections of the other four-plex units. Based upon these facts and grounds (in combination with the facts and grounds forming the basis of his earlier opinions) Mr. Bogle formed the opinion that Unit 22 (which is a four-plex) should be shored up and should have its ceiling removed so the trusses could be inspected. He also formed the opinion that the other two four-plexes should continue to be monitored for progress of their ceiling deflection.*
*When Unit 22's ceiling was opened, Mr. Bogle inspected its trusses. Based upon these facts and grounds (in combination with the facts and grounds forming the basis of his earlier opinions) he formed the opinion that that there was catastrophic failure in Unit*

*22's trusses, and that" they needed to be repaired, and he also formed the opinion that a truss fabricator should be consulted to evaluate the truss construction, and Mr. Bogle also formed the opinion that all full basement units in the condominium complex should be inspected.*

*At Mr. Bogle's request, a representative of Hardpine Inc., 100 Weaver Street, Fall River, MA 02720 (telephone number (508) 678-6322) then came on site at the condominium complex and inspected the trusses. Hardpine is a truss fabrication company. Their inspector is an expert in the field of truss design and fabrication. Plaintiff anticipates calling said individual to testify as an expert at the time of trial.*

*Hardpine took field measurements of certain trusses, recorded the chord and web layout of the trusses, and recorded lumber grades of the truss parts. Hardpine reported that it found number 2 southern yellow pine had been used for the top and bottom chords of the trusses and that number 3 southern yellow pine had been used for the webs of the trusses. Hardpine also reported that it found certain items missing from the truss installation, that certain trusses had metal plates improperly pressed in certain chords, that they found holes cut in certain chords, they found that certain trusses had failed and that in a number of areas trusses were not properly spaced and clipped at partitions. Hardpine used their field measurements and performed a structural analysis (a mathematical evaluation). to calculate the ability of the structure as constructed to support live and dead loads. Based on these facts and grounds, they concluded that the trusses do not meet minimum design criteria or codes and might collapse under normal loads, and that immediate repair or replacement was strongly recommended. They concluded, further, that had these trusses been spaced 12 inches on center they would have passed the code requirements.*

*Based upon these facts and grounds (in combination with the facts and grounds forming the basis of his earlier opinions) Mr. Bogle formed a further opinion that every unit should be monitored. Mr. Bogle then set up an inspection program and once he got measurements in from that inspection program he set up a monitoring program and set up a schedule for repair priority based on relative degrees of deflection found in the various condominium units. Based upon these facts and grounds (in combination with the facts and grounds forming the basis of his earlier opinions) Mr. Bogle formed a further opinion that all of the condominium units having floor trusses should be repaired.*

*After inspecting the first repair and discussing it with the repairing contractor, Mr. Bogle formed the opinion that all future truss repairs {instead of consisting of steel plates on each side of the trusses at breaks) should consist of plates of plywood on both sides of all truss with additional layers of plywood on both sides of each broken truss.*

*From time to time thereafter, as repairs have proceeded, Mr. Bogle has performed further inspections of the condominium units, and he has found additional indications of substandard construction practices having been utilized in connection with installation of support for the trusses and in connection with damage to trusses by plumbing contractors at the time of building construction.*

*Mr. Bogle has inspected and evaluated each repair of the condominium units' trusses, and in each instance has formed the opinion that the unit was repaired correctly.*

Mr. Bogle, in his Affidavit, in opposition to the Defendant's motion for summary judgment states:

(12) It is my opinion, to a reasonable degree of professional certainty, that the amount of weight comprising the dead load on the Eagle's Nest Condominium floors was not sufficient weight, by itself, to cause the floors to structurally fail.
(13) It is my opinion to a reasonable degree of professional certainty, that the floors at Eagle's Nest Condominium were constructed with sufficient strength to support the dead load plus the addition of some live load added onto the floors without the floors structurally failing. The specific amounts of such added live load the floors were constructed capable of handling without structural failure is detailed in my letter attached hereto...
(16) It is my opinion, to a reasonable degree of professional certainty that the structural failure of the Eagle's Nest floors and the resulting substantial impairment in the structural integrity of the floors was caused in part by the weight of people and property (the live load) on the floors.

This information came as a surprise to the defendant as it was not referenced in the plaintiff's answers to interrogatories, nor in his deposition.

On September 16, 2005, Mr. Bogle gave a deposition wherein both parties had an opportunity to question him about his opinions. Mr. Bogle testified at his deposition as follows:

Q. And to your observation, was the truss in unit 15 incapable of holding even dead load? You can't...

A. Hard for me to say that, no.

Q. So you don't know one way or the other.

A. No. I would have to, actually, I would have to ask HardPine to run an analysis strictly on dead load to determine that for sure.

Q. You'd have to do a more detailed analysis?

A. A proper analysis would have to be done.

(Deposition of Steven Bogle, P. 84, L11-20)

Mr. Bogle was further asked:

Q. Did you allow a certain amount of tolerance?

A. Well, we did. And, again, seven eighths was sort of a cutoff point. If we got significantly higher than that, it became an issue. And with that we started to, you know, we'd look more closely at the, at that particular unit. Typically, when they were measuring them, they were under dead load only. Most of the time there were no people upstairs. There was just furniture.

Q. Okay.

A. So if it was deflecting without even significant live loads on the floor.

(Deposition of Steven Bogle, P. 64, L25 – P. 65, L11)

II. Argument

The Plaintiff is in violation of F.R.Civ.P. 26(a)(2).

F.R.Civ.P. 37(c)(1) deals with Failure to Disclose… and states in pertinent part:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

The appropriate sanction in this matter is for this Court to strike Bogle's affidavit in opposition to a Motion for Summary Judgment which was not timely filed. Thibeault v. Square D. Company, 960 F.2d 239 (1st Cir. 1992) (judge acted appropriately in precluding the plaintiff from amending its expert opinion in opposition to a Motion for Summary Judgment). See, also, Minnkota Power Co-op., Inc. v. Manitowac Company, 669 F.2d 525 (8th Cir. 1982).

Mr. Bogle's Affidavit Does Not Satisfy The Evidentiary Requirements Necessary For The Introduction Of Expert Testimony

Since the Affidavit in issue is from an "expert", it must satisfy the evidentiary requirements necessary for the introduction of expert testimony. "For the purposes of summary judgment under Fed.R.Civ.P. 56(e), an expert affidavit must include materials on which the expert based his opinion, as well as an indication of the reasoning process underlying the opinion." Boyd v. State Farm Ins., 158 F.3d 326, 331 (5th Cir. 1998). "A district court may exclude expert testimony where it finds that the testimony has no foundation or rests on… speculative evidence." Schubert v. Nissan Motor Corp. in U.S.A., 148 F.3d 25, 29-30 (1st Cir. 1998). "[A]n expert should not be permitted to give an opinion that is based on conjecture or speculation from an insufficient evidentiary foundation." (Citations Omitted); Damon v. Sun Co., 87F.3d 1467, 1474 (1st. Cir. 1996).

Rule 702 of the Federal Rules of Evidence permits the admission of expert or opinion testimony.

> **Rule 702. Testimony by Experts**
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion..., if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The preliminary question of whether an expert witness is qualified is a matter for determination by the judge. The United States Supreme in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786,125 L. Ed. 2d 469 (1993) (Daubert I) obligates the trial judge to serve as "gatekeeper".

"The task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert, 509 U.S. at 597, 113 S. Ct. at 2799, 125 L Ed. 2d at 485. The Court must determine that "reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S. at 593-4, 113 S. Ct. at 2796, 125 L.Ed.2d at 482. The language of the Daubert opinion speaks to scientific evidence because that is the evidence that was in question in that case but the rule applies to all experts. Kumho Tire Company, Ltd v. Carmichael, 526 US 137,147-48,119 S. Ct. 1167,1174,143 L Ed 2d 23,250-51 (1999).

The Burden of Proof is with the Proffering Party

The proffering party must prove the reliability and relevance of the expert scientific testimony by a preponderance of the evidence. Daubert, 509 US at 592 n. 10, 113 S. Ct. at 2796 n.10, 125 L.Ed. 2d at 482. Notwithstanding the expert's qualifications, his broad assertion as to the reliability of his conclusion is insufficient. "[An] expert cannot establish that a fact is generally accepted merely by saying so". Grimes v. Hoffmann-LaRoche, Inc., 907 F.Supp. 33, 38 (D.N.H. 1995).

*Daubert* and its Progeny Have Suggested Guidance on Assessing Reliability

While not a "definitive checklist or test" Daubert 509 US at 593, sets out factors which "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." Kumho Tire Company, Ltd v. Carmichael, 526 US 137,119 S. Ct 1167,143 L.Ed 2d 238.

These factors are:

1) Whether a "theory or technique. . . can be (and has been) tested"; and

2) Whether it "has been subjected to peer review and publication"; and

3) Whether, in respect to a particular technique, there is a high "known or potential rate of error"; and

4) Whether there are "standards controlling the technique's operation"; and

5) Whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." 509 U.S. at 592-594.

<u>An Analysis of Mr. Bogle's Affidavit Reveals That It Cannot Satisfy The Requirements of Daubert And Its Progeny.</u>

<u>Education and Training</u>

Mr. Bogle never designed trusses. He never worked for a manufacturer of trusses. The plaintiff has proffered no evidence to demonstrate that Mr. Bogle has the credentials to render an opinion. Indeed, he did not even do the analysis in this matter.

<u>Methodology</u>

Mr. Bogle's Affidavit does not:

1. Identify the appropriate standard of a dead load;

2. Identify the actual weight of the dead load that was in the effected condominium units;

3. Identify the appropriate live load standard;

4. Identify what the actual live load was in each condominium unit;

5. Identify whether the actual weight of the dead load and the actual weight of the live load in each condominium unit combined exceeds the dead load requirement.

6. Identify any test he performed to determine the strength of the actual trusses.

7. Identify any calculations he performed to determine the strength of the actual trusses.

8. Identify the methodology by which Mr. Bogle came to his opinions.

9. Identify any figures that he used in rendering his opinions.

10. Identify any calculations demonstrating how much weight the trusses, as defectively constructed, could sustain.

In the absence of the aforementioned evidence, it cannot be determined whether his methodology was accepted within the relevant engineering communities, or whether the formulas he used for calculating force or weight are correct. There is nothing in Mr. Bogle's Affidavit which would permit this court or an expert to evaluate the reliability of Mr. Bogle's assertions.

It has been observed that:

*"An analysis is only as good as the data on which it rests."*

*"Along with an examination of the statistical analysis, therefore, it is important to verify the quality of the data collection and to identify its limitations..."*

*"In Science, reliability refers to reproducibility of results..."*

*"Is the measurement of process valid? Reliability is necessary, but not sufficient, to ensure accuracy."*

*"In addition to reliability, validity is needed...Are the measurements recorded correctly? Judging the adequacy of data collection may involve examining the process by which measurements are recorded and preserved." Federal Judicial Center's Reference Manual On Scientific Evidence, 1994, P. 341-42.*

In the instant matter, the absence of the aforementioned information is critical. The unit which reportedly had the most significant problems in that the deflections were nearly five inches, was unit 15. Specifically unit 15A and unit 15C, unit "A" being the bottom unit and unit "C" being the top unit. Accordingly, the trusses presenting a problem in that unit would effect the floor of 15C and the ceiling of 15A.

Ms. Zeller has been the owner of 15C since the property was constructed in 1983. From 1983 to 1987, she lived there with her husband, since then, she has resided there alone.

According to her correspondence of June 28, 2002 (Exhibit "A" of Defendant's Motion for Summary Judgment) her living room and dining room had been sinking for decades. No one had identified what furniture was in either of these two rooms. We do not know how the weight of the furniture was dispensed over the span of the trusses. We do not know what frequency the rooms were used, or by whom. Essentially, there was a minimal "live load". It is incomprehensible to believe that Mr. Bogle can form an opinion that the "live load" in Ms. Zeller's unit was the proximate cause of the deflection when he has presented no underlying data.

III. Conclusion

Defendant respectfully submits that Mr. Bogle's Affidavit be stricken. See, Dr. Jeffrey Morehouse v. Louisville Matter Group, 2004 U.S. Dist. LEXIS 21766 (June 28, 2004) (held motion to exclude expert opinion and summary judgment granted where plaintiff's engineering expert did not reliably test his hypothesis regarding the amount of stress needed to cause a ladder to bend and fall); Oglesby v. General Motors Corp., 190 F.3d 244 (4th Cir. 1999) (plaintiff's engineering expert precluded from testifying regarding stresses necessary to break a plastic part…he did not know "the amount of the particular stress, and the stress resistance of the part at various temperatures"); Muller v. Synthes Corp., 2001 U.S. Dist. LEXIS 6305 (expert who used "elementary general computations" to determine the maximum stress an object can withstand, precluded from testifying regarding the stress failure of a medical implant).

Defendant, NLC
By its attorneys,

Ronald Langlois, Esq. #2891
Smith & Brink, P.C.
One State Street, Suite 400
Providence, RI 02908
Tel: (401) 351-9970

**CERTIFICATION**

I hereby certify that I mailed a true copy of the within to **Steven Orabone,** Esquire, 20 Ridgevale Court, Cranston, RI 02921 on the 13 day of March, 2006.