UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EAGLE'S NEST CONDOMINIUM
ASSOCIATION, INC., A/K/A
EAGLE NEST CONDOMINIUM ASSOC.

V. C.A.NO: 04-436ML

NEW LONDON COUNTY MUTUAL
INSURANCE COMPANY, NLC INSURANCE
COMPANIES, INC., DOES I THROUGH V
AND NLC INSURANCE COMPANIES,
ALIAS JOHN DOE COMPANY

**DEFENDANT, NEW LONDON COUNTY MUTUAL INSURACE COMPANY'S REPLY MEMORANDUM**

Two Year Statute of Limitation

Admittedly, the endorsement to the policy contains different language than the main policy as to when a legal action may be brought against the insurer. However, it does not alter the result. The endorsement in issue provides:

> Legal Action Against Us
> 2. **...[a]ny action** on this policy **for** the recovery of **any claim** for direct loss or damage by fire and lightning **must be brought within two years after the date on which such direct loss** or damage **occurred**.

Clearly, the first clause provides that "any action" for recovery on "any claim" must be brought within two years after the date on which direct loss...occurred." Acord, Mass. Gen. Law. Ch. 175 §99, Riverdale Mills Corp. v. Fireman's Fund Ins. Co., 123 F. Supp. 2d 37 (D. Ma. 2000) It is not limited to fire and lightning claims.

Consistent with basic principles of contractual interpretation, the use of the disjunctive word "or", means that the the second clause relating to fire and lightning is an alternative to the first clause. Rock v. Ken-Lick and Tip Top Coal, Inc., 199 U.S. App. LEXIS 15194, 24-13 (6th Cir. 1999). Or, is a disjunctive particle used to express an alternative or to give a choice of one among two or more things. Blacks Law Edition, Revised 4th Edition (1968). The disjunctive usage cannot be written off as linguistic happenstance. United States v. Tejada-Beltran, 50 F.3d 105 (1st Cir. 1995).

The plaintiff's suggestion that the two year limitations only applies to fire and lightning damage would render the first clause superfluous. "Such an interpretation would violate one of the cardinal principles of contract construction, namely, that whenever possible, the terms of a contract should be construed to be consistent with one

another." Psaty & Fuhrman, Inc. v. Housing Authority of Providence, 76 R.I. 87, 68 A.2d32, 35 (R.I. 1949) ("construction [of a contractual provision] cannot render meaningless [another]express condition of the contract"); see, also, Cohen v. Steve's Franchise Co., Inc., 927 F.2d 26, 29 (1st Cir. 1991)("A reading rendering contract language meaningless is to be avoided.") cited at Angelo American Ins. Co. v. Shooters at India Point, Inc., et al, 959 F. Supp. 115, 117 (D.R.I. 1997).

"Under basic contract construction, the preferred interpretation is one that provides meaning to every provision and does not read any term out of the contract." Gen. Star. Indem Co. v. Sherry Brooke Revocable Trust, 243 F. Supp. 2d 605, 620 (D. Tex. 2001). [I]t is axiomatic that "effect must be given, if possible, to every word, clause and sentence of a statute...[so that] no part will be inoperative or superfluous, void or insignificant..." Chappell v. R.I. Dep't of Human Servs., 2003 R.I. Super. LEXIS 73, 10-12 (R.I. Super. Ct. 2003). It is a "well accepted and basic principle [of contract interpretation] that wherever possible, contracts must be interpreted to give reasonable meaning to all provisions of the contract; such an interpretation... is always preferable to one which collapses parts of the contract into meaningless, superfluousness, or redundancy. Fortec Const. v. United States, 760 F.2d at 1292; Reliable Bldg. Maint. Co. v. United States, 31 Fed. Cl. 641, 643 (1994); Sharpe Refrigeration, Inc. v. United States, 30 Fed. Cl. 735, 738 (1994).

Courts have examined the sophistication of the parties involved in assessing how contractual language is perceived. Here, the plaintiffs had their own insurance representatives and attorneys reviewing the policy for legal purposes.

The plaintiff, in its opposition memorandum, states, "we look not at what the insurer may have intended the policy to cover or exclude, but rather what an ordinary reader of the policy would have understood the policy terms to mean if he or she had read them." Sanzi v. Shetty, M.D., et al, 864 A.2d 614, 620-21 (R.I. 2005) citing, American Commerce Ins. Co. v. Porto, 811 A.2d 1185, 1192 (R.I. 2002).

It is interesting to note that according to the plaintiff's public adjuster, they filed suit on June 30, 2004 because of the two year anniversary. Clearly, their actions indicate that they understood that the policy had a two year statute of limitations. Moreover, in May of 2004 they were told there was a two year statute of limitations (Affidavit of Richard Aube). Where they erred is with respect to the actual date of the loss, which they assumed was July of 2002, which it is not.

The plaintiff's unsupported suggestion that Ms. Zeller's letter dated June 28, 2002 was mailed and that it took four days to get to the property manager's office ignores the fact that the letter specifically states "the gentleman from your staff [property manager] thought he would have an answer by this coming Monday, July 1, 2002, after researching the blue prints from town hall to determine where the center beam was."

The property manager testified, "it was my maintenance person who initially brought that to my attention...if I recall correctly there were indications there was some

kind of structural problem with cracking in the ceiling and was investigated by maintenance staff. (Perino Depo. at P. 20, L6-25) It must also be remembered that Ms. Zeller, as a unit owner, is a member of the association.

Reply To Plaintiff's Assertion That They Provided Due Notice

The plaintiff argues that "Eagle's Nest took regarding notice to Sidney Smith Jr. as a valid means of attempting to comply with the insurance company's notice provision.

Sidney Smith was specifically asked by plaintiff's counsel:

Q. Did you ever inform NLC of the problem?

A. That I would not have been able to do since I was not an agent of NLC.

(Smith Depo. at P. 14, L14-16)(See Also, P. 21)

Q. Did you discuss this with anybody from New London County, NLC?

A. No.

Q. At any time?

A. As I have said, I was never during this time period, I was not an agent of NLC.

Therefore, I would not be able to have direct communications with anybody from NLC.

(P. 50, L8-15).

Mr. Smith was further asked:

Q. To be an agent, you have to have a licensing agreement with NLC, is that correct?

A. Yes.

Q. And you did not have one prior to January 1, 2005.

A. Correct.

(P. 73, L9-19)

Consistent with Mr. Smith's testimony, Eagle's Nest's property manager testified:

Q. Who is Sidney Smith?

A. He was the insurance agent with Smith Mack and Associates who was the agent for Eagle's Nest.

Q. He was the insurance agent for Eagle's Nest?

A. Yes.

Q. How was he chosen to be the insurance agent for Eagle's Nest?

A. Through a bid process.

The plaintiff's suggestion that they relied upon Mr. Smith to provide notice is directly rebutted by Ms. Perino's testimony.

Q. Did Mr. Smith at any point in time ever tell you that he notified the insurer… about this problem?

A. No.

Q. …[a]s far as this notice of this problem, it never went any further than Mr. Smith?

A. Yes.

Ms. Perino was further asked:

Q. After that, during the year of 2003, from January 1, 2003 to December 31, 2003, did the Association to your knowledge put any insurance carrier on notice of the problem at the condominiums related to the trusses?

A. No.

Q. They never did?

A. No.

Q. Did you recommend as early as February 2003 that they get a denial letter from the insurance carrier?

A. Yes.

Q. And they never followed your advice, did they?

A. No.

(Perino Depo. at P. 47, L. 9-L25)

Prejudice

It has been admitted that the plaintiff repaired at least fourteen units without notifying NLC, or giving them the opportunity to inspect the property, verify the conditions, assess when the condition may have occurred, and its potential causes. The plaintiff's willful destruction of the evidence and the delay of notice has precluded the defendant from making any inquiry into the alleged event. Prejudice results from the plaintiffs putting themselves in the position of being the only witnesses of the knowledge of what occurred. In the spoliation context, Courts presume prejudice and sanction a party for spoliation of evidence by precluding the party and its expert from giving testimony about the missing evidence. Allstate Ins. Co. v. Creative Equipment Corp., et al, U.S. Dist. Ct. D.R.I. C.A.No: 920467 report and recommendation of Magistrate Lovegrin attached. Northern Assur. Co. v. Wear, 145 F.R.D. 281 (D.N.E. 1993); Chrysler Motor Corp. v. Hanley, 141 F.R.D. 362 (D.Mass. 1991); Nally v. Volkswagon of America, Inc., 405 Mass. 191 (1989); Lewis v. Darce Towing Co., Inc., 94 F.R.D. 262 (1982). The Courts in those cases focused on the critical nature of evidence lost and the incurable prejudice to defense as the fact is justifying exclusion of evidence. In all of the aforementioned cases, the court sanctioned the party that lost the evidence because it deprived the other party of critical evidence at a crucial time.

Defendant, NLC
By its attorneys,

Ronald Langlois, Esq. #2891
Smith & Brink, P.C.
One State Street, Suite 400
Providence, RI 02908
Tel: (401) 351-9970

**CERTIFICATION**

I hereby certify that I mailed a true copy of the within to **Steven Orabone,** Esquire, 20 Ridgevale Court, Cranston, RI 02921 on the 13 day of March, 2006.

Dana Palangio