UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EAGLE'S NEST CONDOMINIUM ASSOCIATION, INC., ALSO KNOWN AS EAGLE NEST CONDOMINIUM ASSOC

Plaintiff,

vs.

NEW LONDON COUNTY MUTUAL INSURANCE COMPANY, NLC INSURANCE COMPANIES, INC., DOES I THROUGH V, AND NLC INSURANCE COMPANIES, ALIAS JOHN DOE COMPANY

Defendants

Civil Action, File No.: 04-436ML

**PLAINTIFF'S COMBINED MEMORANDUM IN SUPPORT OF PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO EXCLUDE THE PLAINTIFF FROM IDENTIFYING NEW EXPERTS AND USING NEW COMPUTER MODELING FORMULAS, IN SUPPORT OF PLAINTIFF'S OBJECTION TO SANCTIONS, AND SUPPORTING PLAINTIFF'S CONDITIONAL REQUEST FOR INSTRUCTIONS ON SCOPE OF PLAINTIFF'S SUPPLEMENTAL DISCOVERY RESPONSES**

In February, 2003, Aiman Alawa, Ph.D. worked for HardPine. At that time, he collected truss information with Steven Bogle, and used it to analyze, and report on, Eagle's Nest's Floor trusses. Dr. Alawa used MiTek Industries software for that analysis. By August 12, 2004, Eagle's Nest had already provided Dr. Alawa's February 2003 report to NLC.

In January of 2006, HardPine ran a second analysis on the Eagle's Nest floor trusses for Steven Bogle. This second analysis used the data that Dr. Alawa collected in February 2003 (with the added data Steven Bogle provided concerning the weight

of gypcrete material samples). Dr. Alawa had left HardPine in approximately August of 2004, and so Nancy Aguiar of HardPine ran this second analysis. This second analysis also used software from MiTek Industries.

In March 2006, Plaintiff's counsel interviewed Nancy Aguiar and Domingos Medeiros both of HardPine concerning the truss analyses. Based upon that interview, it was apparent that, of the people still at HardPine, Mr. Medeiros was the most knowledgeable concerning the HardPine analyses. Thus, Plaintiff's attorney obtained an affidavit from Mr. Medeiros and submitted it to the Court in connection with the pending motions before the Court.

Following an April 10, 2006 hearing, this Court entered an Order granting Plaintiff an extension of time up to and including July 10, 2006 to supplement its discovery responses (attached Exhibit 1). While in court on April 10, 2006, Eagle's Nest's attorney indicated to NLC's attorney that Eagle's Nest's attorney would seek to locate Dr. Alawa. NLC's attorney expressed no opposition to this at that time. Of the 3 HardPine related people (Mr. Medeiros, Ms. Aguiar, and Dr. Alawa) Dr. Alawa is clearly the most knowledgeable concerning Eagle's Nest's floor trusses. He has the most qualifications, and he collected all the data except the gypcrete weight.

On April 10, 2006, after leaving the court hearing, Plaintiff's counsel contacted Domingos Medeiros of HardPine. In that telephone conference, Mr. Medeiros informed Plaintiff's counsel that Dr. Alawa had recently contacted him on an unrelated matter. Mr. Medeiros then informed Plaintiff's counsel that Mr. Medeiros had discussed this case with Dr. Alawa, and that Dr. Alawa indicated that he was willing to testify in this matter. Mr. Medeiros then gave Dr. Alawa's cell phone number to Eagle's Nest's attorney.

After learning of Dr. Alawa's availability, Eagle's Nest's attorney notified NLC's attorney of this fact. Attached Exhibit 2 is a copy of a facsimile Eagle's Nest's Attorney sent to NLC's attorney on April 12, 2006 after they discussed Dr. Alawa. In that facsimile, Eagle's Nest's attorney noted "With regard to my deposing your expert, I understand you have no objection, so long as it occurs after the depositions of Mr. Bogle and Mr. Alawa…." At that point, NLC's attorney raised no objection to Dr. Alawa's deposition.

On May 5, NLC's attorney sent Eagle's Nest the letter attached as Exhibit 3, in which NLC's attorney requests available deposition dates. Eagle's Nest's attorney did not receive this letter until May 10, as he had gone out to celebrate his birthday on Block Island (where he then contracted the flu). On May 10, 2006 Eagle's Nest's attorney called attorney Langlois to attempt

to schedule the depositions of Steven Bogle and of Aiman Alawa, but was told that Mr. Langlois was busy preparing for an arbitration. Eagle's Nest's attorney left a message for attorney Langlois requesting that he call back.

After not hearing back from NLC's attorney in response to the May 10, 2006 phone message, Eagle's Nest's attorney sent NLC's attorney the May 22, 2006 letter attached as Exhibit 4. This was sent via both e-mail and first-class mail.

After learning of Dr. Alawa's availability and willingness to be deposed, Eagle's Nest's attorney met with Dr. Alawa, and explained that NLC raised issues with the methodology used to analyze the Eagle's Nest trusses. Dr. Alawa noted that there are additional software programs available to analyze trusses. He has indicated that he can do analysis with an additional software program to confirm the findings made with the Mitek software. Dr. Alawa also noted he can do calculations by hand to analyze the trusses. Eagle's Nest's attorney informed NLC's attorney that there are such additional software programs available. NLC's attorney has filed an objection to Dr. Alawa using any additional software programs.

The Eagle's Nest condominium units consist of essentially 4 different styles (2 types of duplexes and 2 types of quadplexes). When Dr. Alawa collected his data in February 2003, he had access to exposed trusses in a quadplex, but apparently not to any

exposed trusses in a duplex. Dr. Alawa indicated to Eagle's Nest's attorney that he would like to examine and measure a duplex truss if possible. Eagle's Nest's attorney inquired with Eagle's Nest whether this would be possible, and learned that unit 16A (a duplex) was scheduled for truss repairs, and that its trusses would be exposed the afternoon of June 5, 2006.

The May 22, 2006 letter to NLC's attorney informed him that Unit 16A's trusses would be available for NLC's expert witness to examine. NLC's expert went to unit 16A on June 6, 2006. NLC's expert was present while Eagle's Nest's experts (Bogle and Alawa) inspected unit 16A, and NLC's expert conducted his own inspection that day.

In a June 2, 2006 letter (e-mailed and mailed to NLC's attorney) Eagle's Nest's attorney also informed NLC that Eagle's Nest was attempting to arrange access to some of the other units on the June 6, 2006 inspection day so its expert could observe the finished floors, and that if this occurred NLC's expert was welcome to join Eagle's Nest's experts in observing the finished floors. See attached Exhibit 5. On the day of the June 6, 2006 inspection, NLC's expert witness declined that opportunity. The June 2, 2006 letter also noted that Dr. Alawa will prepare a report after the June 6, 2006 inspection which Eagle's Nest's attorney will provide to NLC's attorney. Dr. Alawa informed Eagle's Nest's attorney that he would need approximately 2

weekends to prepare that report. Eagle's Nest has had to wait for Dr. Alawa's report before having Steven Bogle prepare a report, as Steven Bogle's report will be based, in part, on Dr. Alawa's report.

At the June 6, 2006 inspection, Eagle's Nest' attorney (as requested by NLC's attorney) also brought the drawings of the condominiums Eagle's Nest's attorney had acquired in May 2006 from Warwick City Hall and from Eagle's Nest's president. Eagle's Nest's attorney had informed NLC's attorney of the drawings after he acquired them in May 2006, and asked whether NLC's attorney wanted to have copies sent to him. At that time, NLC's attorney requested that Eagle's Nest's attorney hold off on sending them for the time being. At the June 6, 2006 inspection, NLC's expert declined the opportunity to examine those drawings, but an attorney who came to the inspection in place of attorney Langlois requested copies of them. Those copies have been hand-delivered to NLC's attorney with this memorandum and objection.

Eagle's Nest's attorney's May 22, 2006 letter to NLC's attorney, indicates that Eagle's Nest's attorney intended to schedule Dr. Alawa's deposition for the morning of July 8, 2006. NLC's attorney responded that he was beginning a vacation that day, so Eagle's Nest's attorney rescheduled Dr. Alawa's deposition for July 7, 2006 at 1:30. In response to that, NLC's attorney indicated he was willing to start Dr. Alawa's deposition

first thing in the morning on July 7, 2006 (see attached Exhibit 6. Thus Eagle's Nest's attorney has rescheduled the deposition for July 7, 2006 at 10:00 a.m. See attached Exhibit 7.

Aiman Alawa, Ph.D. is not a new expert witness. What is more, the Court's Order entered April 20, 2006 granting Plaintiff's leave up to July 10, 2006 to supplement its discovery responses does not limit the scope of those responses.

In the event that the Court rules that Aiman Alawa, Ph.D. is a new expert and/or that there are limits on the scope of Plaintiff's supplemental discovery responses concerning experts Aiamn Alawa, Steven Bogle, Domingos Medeiros and/or Nancy Aguiar (and/or their opinions and/or methodologies allowed under the Court's Order entered April 20, 2006), then Plaintiff requests instructions on the scope of Plaintiff's allowed supplemental discovery responses, and specifically requests that Plaintiff, in its supplemental discovery, is allowed to do the following:

1. Designate Aiman Alawa, Ph.D. as an expert witness.

2. Submit a report from Aiman Alawa, Ph.D.

3. Include in Aiman Alawa, Ph.D.'s report analysis that (in addition to using MiTek software) uses such other software program and/or method as Aiman Alawa wishes to utilize.

4. If this court will not allow Aiman Alawa, Ph.D. to use another software program in his report, then to at least allow him to issue a report that uses MiTek software.

5. Include in Aiman Alawa, Ph.D.'s report analysis based on additional information concerning the condominium units that has been collected since April 10, 2006.

6. Depose Aiman Alawa, Ph.D. on July 7, 2006 at 10:00 a.m., or at such other date convenient to Plaintiff and Defendant.

7. Submit a report from Steven Bogle

8. Include in Steven Bogle's report such reports as are provided to him by Aiman Alawa, Ph.D.

9. Include in Steven Bogle's report analysis based on additional information concerning the condominium units that has been collected since April 10, 2006.

10. Depose Steven Bogle on July 6, 2006 at 10:00 a.m. or at such other date convenient to Plaintiff and Defendant

11. Designate Domingos Medeiros and/or Nancy Aguiar expert witnesses and, if necessary, submit a report from Domingos Medeiros and/or Nancy Aguiar of HardPine concerning HardPine's reports and analyses and to be

allowed, if necessary, to depose Domingos Medeiros and/or Nancy Aguiar at such date and time as is convenient to Plaintiff and Defendant.

12. Amend its interrogatory answers to reflect all reports, expert opinions, and expert status of Aiman Alawa, Ph.D., Steven Bogle, Domingos Medeiros, and Nancy Aguiar and the information on which their reports and opinions are based.

There is no prejudice to NLC in allowing any of this supplemental discovery. NLC has long been aware of the fact that Dr. Alawa is an expert in this matter. NLC, has had Dr. Alawa's February 2003 report since Mr. Aube provided it to them in 2004.

In July 2005, Plaintiff filed answers to Defendant's interrogatories (See attached Exhibit 8). In answer to Defendant's interrogatory #2, Plaintiff disclosed Dr. Alawa of HardPine as a person having knowledge of the defective trusses. In answer to NLC's interrogatory 4, Eagle's Nest noted that it anticipated calling as an expert witness the HardPine individual who had inspected the trusses at Steven Bogle's request. Dr. Alawa was that individual. In Eagle's Nest's reponse to NLC's request for production, they again produced Dr. Alawa's February 2003 report of his truss analysis.

NLC actually noticed Dr. Alawa's deposition in September 2005. At that time, however, Dr. Alawa was no longer employed by

HardPine. Plaintiff's attorney explained this to Defendant's attorney, and the deposition did not go forward as scheduled. NLC never attempted to reschedule Dr. Alawa's deposition. Clearly, NLC has been well aware from the outset of this matter of Dr. Alawa's report and of the fact that he is an expert in this matter.

In preparing now to testify, Dr. Alawa naturally sought to collect as much of the available information as possible and to include it in his analysis (just as NLC's experts will). That information has included Mr. Bogle's reports and affidavit, Mr. Medeiros's affidavit, the gypcrete weight data, the second Hardpine analysis and the data related to it, Dr. Alawa's February 2003 quadplex truss inspection information and report, Dr. Alawa's June 2006 duplex truss inspection data and the interview information he obtained from the contractor performing the repairs and from a number of unit owners and during his inspection of a number of units on June 6, 2006, the plans on file with the City of Warwick, and the plans recently provided by a unit owner to Eagle's Nest's president, the deposition witness transcripts, the various photographs taken by ACC contracting and the various photographs taken by Steven Bogle.

NLC is not prejudiced in any way by this Court allowing Dr. Alawa to do a complete analysis based on this information nor is it prejudiced by allowing Dr. Alawa to use any other software

and/or methodologies he wishes to use to analyze Eagle's Nest's trusses.

NLC's attorney will receive Dr. Alawa's report well in advance of his deposition. The information available to Dr. Alawa is also available to NLC's expert witnesses and has been or will be provided to them. NLC's expert witnesses are free to formulate their opinions utilizing any software and methodologies they chose. For these reasons, NLC is, at the very least, on an equal footing with Eagle's Nest.

NLC's expert witnesses, however, actually have the advantage over Eagle's Nest's experts. The Court has already granted NLC until August 9, 2006 to file its experts' reports. More than a month before that time, NLC's experts will have all of Dr. Alawa's information, opinions, and reasoning via his reports and his deposition testimony.

It is fair in this case to allow both sides to present their experts' opinions based on the available evidence and utilizing the best methodologies and knowledge. In that case a fair decision based on the merits can be made.

Dated: June 12, 2006

Respectfully submitted, Plaintiff,
Eagle's Nest Condominium
Association, Inc., also known as
Eagle Nest Condominium Assoc,
By its Attorney,

Steven H. Orabone, Esq. (#3205)
20 Ridgevale Court
Cranston, RI 02921
Telephone: (401) 944-5777
FAX: (401) 942-1936
E-mail: stevenorabone@cox.net

**CERTIFICATION**

I, the undersigned, hereby certify that I hand-delivered a copy of the within Plaintiff's Memorandum on June 12, 2006 to Ronald Langlois, Esq., Smith & Brink, P.C., One State Street, Suite 400, Providence, RI 02908.