UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EAGLE'S NEST CONDOMINIUM ASSOCIATION, INC., ALSO KNOWN AS EAGLE NEST CONDOMINIUM ASSOC<br><br>Plaintiff,<br><br>vs.<br><br>NEW LONDON COUNTY MUTUAL INSURANCE COMPANY, NLC INSURANCE COMPANIES, INC., DOES I THROUGH V, AND NLC INSURANCE COMPANIES, ALIAS JOHN DOE COMPANY<br><br>Defendants | Civil Action, File No.: 04-436ML |

**PLAINTIFF, EAGLE'S NEST CONDOMINIUM ASSOCIATION, INC.'S ANSWERS TO DEFENDANT, NEW LONDON COUNTY MUTUAL INSURANCE COMPANY'S INTERROGATORIES**

NOW COMES Plaintiff, Eagle's Nest Condominium Association, Inc. (hereinafter, for ease of reference, referred to as "Eagle's Nest") and answers the interrogatories of Defendant, New London County Mutual Insurance Company (hereinafter, for ease of reference, referred to as "NLC") as follows:

Interrogatory 1: Please state your name and address, your title and responsibilities with the named Plaintiff and the names and addresses of those people providing information used to formulate the answers to interrogatories.

**Answer 1: My name is Roberta McMahon. My address is 10A Eagle Run, Warwick, RI 02818. My title and responsibility is president of Eagle's Run Condominium Association. In formulating these answers to interrogatories, I relied, in part, on information from the following listed individuals (whose addresses are indicated below, if known):**

**(a) Frank Kutz, 41A Eagle Run, East Greenwich, RI 02818;**

**(b) Cindy Bjerke;**

**(c) Joan Zeller, 15C Eagle Run, East Greenwich, RI 02818;**

Exhibit 8

(d) Claire Downing, 15D Eagle Run East Greenwich, RI 02818;

(e) Domenic Giordano, Giordano Enterprises, Inc., 1528 Mineral Spring Avenue, North Providence, RI 02904;

(f) Steven A. Bogle, P.E., Geisser Engineering Corporation, 227 Wampanoag Trail, Riverside, R.I. 02915;

(g) Barbara Perrino, Perrino & Associates, Inc., 100 Jefferson Blvd., Warwick, RI 02888;

(h) Frank Lombardi, Esq., 100 Smith St., Providence, RI 02908;

(i) Richard F. Aube, P.O. Box 1273, West Warwick, RI 02893.

Interrogatory 2: Set forth the name and address of each person believed or known by you, or anyone acting on your behalf, to have any knowledge concerning the defective trusses, including the name of any person having any knowledge concerning the claims set forth in your complaint, and the name of any person who may testify in this matter.

**Answer 2:** **Plaintiff identifies each of the unit owners listed in exhibit 16-i of plaitiff's response to NLC's Request for Production. Said exhibit is incorporated by reference as part of Plaintiff's answer to this interrogatory. Plaintiff also specifically identifies the various following individuals listed below, with addresses, if known, as indicated:**

**(a) Marcel Dutwin, ACC Contractors, Inc., 1050 Main St., Suite 1A, P.O. Box 143, East Greenwich, RI 02818;**

**(b) Domenic Giordano, 1528 Mineral Spring Avenue, North Providence, RI 02904;**

**(c) Barbara Perrino, Perrino & Associates, 100 Jefferson Blvd., Suite 205, Warwick, RI 02888;**

**(d) Richard Aube, P.O. Box 1273, West Warwick, RI 02893**

(e) Steven A. Bogle, P.E., Geisser Engineering Corporation, 227 Wampanoag Trail, Riverside, R.I. 02915;

(f) Aiman Alawa, Ph.D., Engineering Manager, HardPine, Inc., 100 Weaver Street, Fall River, MA 02720;

(g) Robert (Brett) Hiltz, Integra Construction, LLC, 73 Taunton Ave., East Providence, RI 02914;

(h) Steven Coletta, Coletta Construction

(i) Jones Moving;

(j) Hogan moving;

(k) John Pagliaro, Warwick Building Department, 3275 Post Road, Warwick, RI 02886;

(l) Sid Smith, 3384 Post Road, Suite 1, Warwick Rhode 02886-7133;

(m) Frank Lombardi, Esq., 100 Smith St., Providence, RI 02908;

(n) David Grandpre;

(o) James Heaney;

(p) Shailer and Greene, 1067 Warwick Avenue, Warwick, RI 02888.

Interrogatory 3: If you or anyone acting on your behalf has obtained any statements, signed or unsigned, written or recorded, of any person having any knowledge concerning the claims contained in the Complaint, state, for each such statement:

(a) the full name and address of the person giving the statement;

(b) the date and number of pages or length of the statement;

(c) the full name, address and relationship to you of the person obtaining the statement; and

(d) the full name and address of the present custodians of each and every original or copy of said statement.

**Answer 3:** **Attorney Steven H. Orabone has interviewed one of Plaintiff's expert witnesses, Steven A. Bogle, P.E., Geisser Engineering Corporation, 227 Wampanoag Trail, Riverside, R.I. 02915, on various dates and has made notes of those interviews. Plaintiff objects to providing further information concerning those interviews on the grounds that they are attorney work product and are trial preparation materials.**

**Attorney Steven H. Orabone has interviewed Plaintiff's adjuster, Richard Aube, P.O. Box 1273, West Warwick, RI 02893, on various dates and has made notes of those interviews. Plaintiff objects to providing further information concerning those interviews on the grounds that they are attorney work product and are trial preparation materials.**

**Attorney Steven H. Orabone has interviewed unit owner, and Plaintiff's President, Roberta McMahon, 10A Eagle Run, Warwick, RI 02818, on various dates and has made notes of those interviews. Plaintiff objects to providing further information concerning those interviews on the grounds that they are attorney work product and are trial preparation materials.**

**Attorney Steven H. Orabone interviewed unit owner, Joan Zeller, 15C Eagle Run, East Greenwich, RI 02818, on May 13, 2005, and has made notes of that interview. Plaintiff objects to providing further information concerning that interview on the grounds that it is attorney work product and trial preparation material.**

**Attorney Steven H. Orabone interviewed unit 15A owner, Al Jackavony, and unit 15A occupant Frances Jacvony 15A Eagle Run, East Greenwich, RI 02818, on May 13, 2005, and has made notes of that interview. Plaintiff objects to providing further information concerning that interview on the grounds that it is attorney work product and trial preparation material.**

Interrogatory 4: For each such person whom you or your attorneys anticipate calling to testify as an expert at the time of trial, state his/her full name, residential address, business address, occupation and field of expertise, the substance of the facts and

opinions upon which he/she is expected to testify; and a summary of the grounds for each such opinion.

**Answer 4:** Plaintiff anticipates calling to testify as an expert at the time of trial Steven A. Bogle, P.E.; residential address: 47 Mohill Avenue, Swansea, MA 02777; business address: 227 Wampanoag Trail, Riverside, RI 02915; occupation: Professional Engineer (Senior Project engineer for Geisser Engineering); Field of Expertise: Residential and light commercial structural engineering.

Initially, Robert (Brett) Hiltz reported his measurements of Unit 15's ceiling deflection to Mr. Bogle. Mr. Bogle, therefore, started with a visual inspection of unit 15. In addition, at that time, Mr. Bogle measured one of Unit 15's trusses and visually inspected part of another truss at Unit 15. At that point, Mr. Bogle did not find any breaks in the trusses. Based on these facts and grounds, Mr. Bogle formed a preliminary opinion that the Unit 15 trusses were not properly designed to support the superimposed live and dead load for the distance they spanned and he formed a preliminary opinion that Unit 15's trusses should be reinforced with plywood on each side of the trusses to increase the amount of load the trusses could carry.

After Unit 15's repairs were begun, Mr. Bogle was called back in, and further inspected unit 15's trusses. In this inspection, Mr. Bogle, observed breaks on 2 of the trusses' bottom chords and based upon these facts and grounds (in combination with the facts and grounds forming the basis of his earlier opinion) he formed the opinion that Unit 15 had severe structural failure, and that other, four-plex style units in the condominium complex should be inspected. Also based on these facts and grounds, Mr. Bogle recommended that steel plates be used on each side of the broken trusses at the break. In later repaired units, the steel recommendation was replaced with a recommendation of added layers of plywood on future broken truss repairs.

With Brett, Mr. Bogle thereafter measured the ceiling deflections of the other four-plex units. Based upon these facts and grounds (in combination with the facts and grounds forming the basis of his earlier opinions) Mr. Bogle formed the opinion that Unit 22 (which is a four-plex) should be shored up and should have its ceiling removed so the trusses could be inspected. He also formed the opinion that the other two four-plexes should continue to be monitored for progress of their ceiling deflection.

When Unit 22's ceiling was opened, Mr. Bogle inspected its trusses. Based upon these facts and grounds (in combination with the facts and grounds forming the basis of his earlier opinions) he formed the

opinion that that there was catastrophic failure in Unit 22's trusses, and that they needed to be repaired, and he also formed the opinion that a truss fabricator should be consulted to evaluate the truss construction, and Mr. Bogle also formed the opinion that all full basement units in the condominium complex should be inspected.

At Mr. Bogle's request, a representative of Hardpine Inc., 100 Weaver Street, Fall River, MA 02720 (telephone number (508) 678-6322) then came on site at the condominium complex and inspected the trusses. Hardpine is a truss fabrication company. Their inspector is an expert in the field of truss design and fabrication. Plaintiff anticipates calling said individual to testify as an expert at the time of trial.

Hardpine took field measurements of certain trusses, recorded the chord and web layout of the trusses, and recorded lumber grades of the truss parts. Hardpine reported that it found number 2 southern yellow pine had been used for the top and bottom chords of the trusses and that number 3 southern yellow pine had been used for the webs of the trusses. Hardpine also reported that it found certain items missing from the truss installation, that certain trusses had metal plates improperly pressed in certain chords, that they found holes cut in certain chords, they found that certain trusses had failed and that in a number of areas trusses were not properly spaced and clipped at partitions. Hardpine used their field measurements and performed a structural analysis (a mathematical evaluation) to calculate the ability of the structure as constructed to support live and dead loads. Based on these facts and grounds, they concluded that the trusses do not meet minimum design criteria or codes and might collapse under normal loads, and that immediate repair or replacement was strongly recommended. They concluded, further, that had these trusses been spaced 12 inches on center they would have passed the code requirements.

Based upon these facts and grounds (in combination with the facts and grounds forming the basis of his earlier opinions) Mr. Bogle formed a further opinion that every unit should be monitored. Mr. Bogle then set up an inspection program and once he got measurements in from that inspection program he set up a monitoring program and set up a schedule for repair priority based on relative degrees of deflection found in the various condominium units. Based upon these facts and grounds (in combination with the facts and grounds forming the basis of his earlier opinions) Mr. Bogle formed a further opinion that all of the condominium units having floor trusses should be repaired.

After inspecting the first repair and discussing it with the repairing contractor, Mr. Bogle formed the opinion that all future truss repairs (instead of consisting of steel plates on each side of

**the trusses at breaks) should consist of plates of plywood on both sides of all truss with additional layers of plywood on both sides of each broken truss. From time to time thereafter, as repairs have proceeded, Mr. Bogle has performed further inspections of the condominium units, and he has found additional indications of substandard construction practices having been utilized in connection with installation of support for the trusses and in connection with damage to trusses by plumbing contractors at the time of building construction.**

**Mr. Bogle has inspected and evaluated each repair of the condominium units' trusses, and in each instance has formed the opinion that the unit was repaired correctly.**

Interrogatory 5: If you have suffered financial loss as a result of the claims contained in the Complaint, please state in complete detail all bills, invoices, charges or other financial expenses incurred by you or on your behalf, including what amount, itemizing as far as possible, any and all expenses and/or loss in business.

**Answer 5: See Exhibits 1-i and 1-ii produced with Plaintiff's response to NLC's Request for Production. Said Exhibits are incorporated by reference as Plaintiff's answer to this interrogatory.**

Interrogatory 6: If you claim that you will have to incur additional costs as a result of the claims contained in the Complaint, please state in complete detail, all further expenses anticipated in repairing the buildings.

**Answer 6: See Exhibits 1-I and 1-ii produced with Plaintiff's response to NLC's Request for Production. Said Exhibits are incorporated by reference as Plaintiff's answer to this interrogatory.**

Interrogatory 7: If any inspections were performed on the subject property both prior to and after the claims alleged in your Complaint, please state:

(a) the date of each inspection;

(b) identify fully each and every person who performed or witnessed the inspection, stating the name and current address of each;